IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

CLIFFORD BASKIN,                    )
                                    )
            Plaintiff,              )
                                    )
    vs.                             )          7:16-cv-00084-LSC
                                    )
NANCY BERRYHILL,                    )
Commissioner of Social Security,    )
                                    )
            Defendant.              )

**MEMORANDUM OF OPINION**

## I.    Introduction

The magistrate judge to whom this Social Security appeal was previously assigned has entered a Report & Recommendation recommending reversal of the Administrative Law Judge's finding that Plaintiff was not disabled within the meaning of the Social Security Act under Listing 12.05C (mental retardation) and remand with direction to award and calculate benefits and other relief. (Doc. 12.) Neither party filed objections to the Report & Recommendation within the time allotted by the magistrate judge. This case was then reassigned to the undersigned.

After initial review, the undersigned stated that this Court was not inclined to adopt and accept the magistrate judge's Report & Recommendation and requested the parties' respective positions on the matter through additional

1

briefing. The plaintiff then filed a brief in support of the magistrate judge's Report & Recommendation (doc. 15), and the Commissioner of the Social Security Administration filed a brief in opposition (doc. 14).

After now having thoroughly reviewed the entire administrative record, and having the benefit of the parties' original and supplemental briefs, this Court finds that the magistrate judge's Report & Recommendation is not due to be adopted and accepted. Rather, for the following reasons, the decision of the Commissioner of the Social Security Administration is due to be affirmed.

## II.    Background

The plaintiff, Clifford Baskin, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for Supplemental Security Income ("SSI"), a period of disability, and Disability Insurance Benefits ("DIB"). Mr. Baskin timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). More specifically, an Administrative Law Judge ("ALJ") initially denied Mr. Baskin's applications in a decision issued on April 26, 2012. (Tr. at 159-75.) However, the Appeals Council remanded the case to the ALJ on July 24, 2013, to develop the record further. (Tr. at 176-80.) The ALJ then held a supplemental hearing and issued a second denial

decision on May 15, 2014. (Tr. at 79-98, 104.) The Appeals Council denied review on November 25, 2015, which deems the ALJ's decision as the Commissioner's final decision. (Tr. at 1.)

Mr. Baskin was 42 years old at the time of the ALJ's decision, and he attended school through the twelfth grade but did not graduate, instead obtaining a certificate of attendance. (Tr. at 294, 368.) His past work experiences include employment as a hand bander, forklift operator, construction worker, machine operator, and grocery bagger. (Tr. at 96, 368-70, 400-07.) Mr. Baskin claims that he became disabled on May 1, 2010, due to mental retardation, diabetes, hypertension, and carpal tunnel syndrome. (Tr. at 294, 366-72, 377-85, 431-32.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§

404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. Baskin was insured through December 31, 2013. (Tr. at 85.) He further determined that Mr. Baskin has not engaged in SGA since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's diabetes with neuropathy, carpal tunnel

syndrome, hypertension, hyperlipidemia, hernia, obesity, and borderline intellectual functioning are considered "severe" based on the requirements set forth in the regulations. (Tr. at 85.) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 86.) Further, he determined that Mr. Baskin has the following RFC: he can perform the exertional and nonexertional requirements of sedentary work with these additional limitations: he can sit, stand, and walk for six out of eight hours but should have a sit/stand option; he can never climb ladders, ropes, or scaffolds; he can occasionally push/pull with the upper right extremity; he can occasionally climb ramps/stairs, balance, kneel, crouch, crawl, and stoop; he can frequently reach, handle, finger, and feel with the upper right extremity; he cannot work at unprotected heights or walk on uneven terrain; he should avoid work environments with poor ventilation, extremes of heat and cold, and excessive noise or vibration; he can understand, remember and carry out short and simple instructions; perform simple, routine, repetitive tasks; and deal with occasional, gradual changes in the workplace; yet, he cannot read instructions, write reports, or perform math calculations. (Tr. at 89-96).

According to the ALJ at step four, Mr. Baskin is unable to perform any of his past relevant work, he is a "younger individual age 18-44," he has a "limited

education," and he is able to communicate in English, as those terms are defined by the regulations. (Tr. at 96-97.) The ALJ then enlisted a Vocational Expert ("VE") to find at step five that there are a significant number of jobs in the national economy that Mr. Baskin is capable of performing, such as machine tender, folder, and machine operator. (Tr. at 97-98.) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 1, 2010, through the date of this decision." (Tr. at 98.)

## III. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210

(11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV.  Discussion

Mr. Baskin argues that the Commissioner's decision should be reversed and remanded for two reasons: the ALJ erred in finding that he did not meet Listing

12.05C for mental retardation at step three of the sequential evaluation process, and the ALJ erred in giving only some weight to the opinion of Dr. Donald W. Blanton, a psychiatrist who examined Plaintiff once and diagnosed Plaintiff with mild mental retardation.

**A.     Meeting Listing 12.05C at Step Three**

At step three, under the theory of presumptive disability, a claimant qualifies for benefits if he has an impairment that meets or equals an impairment found in the Listing of Impairments. 20 C.F.R. § 404.1520(d) (2010); 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2010). The listings specify the criteria for impairments that are considered presumptively disabling. 20 C.F.R. § 404.1525(a). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The version of Listing 12.05C that was in effect when the ALJ wrote his opinion sets forth the requirements for a finding of disability due to mental retardation:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation (intellectual disability). It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

*See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A). The introductory paragraph to

Listing 12.05 provides as follows:

> Mental retardation refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

*See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. As relevant here, the criteria in part

C of Listing 12.05 is as follows: "A valid verbal, performance, or full scale IQ of 60

through 70 and a physical or other mental impairment imposing an additional and

significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1

§ 12.05.

Absent some evidence of sudden trauma, there is a presumption that mental

retardation is a condition that remains constant throughout life. *See Hodges v.

Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001). Thus, a claimant need not

necessarily prove onset before age 22. *See id.* Additionally, while an IQ score within

a certain range creates a rebuttable presumption that a claimant satisfies the

diagnostic criteria for mental retardation, the presumption does not arise where a

qualifying IQ score is "inconsistent with other evidence in the record on the

claimant's daily activities and behavior." *Lowery v. Sullivan*, 979 F.2d 835, 837

(11th Cir. 1992). An ALJ may consider additional evidence, such as "medical

reports, daily activities, behaviors, and other evidence" when evaluating the record

for inconsistencies between an IQ score and a claimant's daily activities and behaviors. *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986).

Mr. Baskin's school records indicate he repeated the fourth grade, was in special education classes for at least grades nine through twelve, and did not graduate high school but received a certificate of attendance. (Tr. at 409, 411, 425, 428). In seventh grade, the Otis-Lennon School Ability Test revealed a school ability index of 55, which was in the first percentile. (Tr. at 413). Standardized testing results were in the lowest levels. (Tr. at 417, 423).

However, Mr. Baskin worked continuously from 1997 through 2008 in various jobs that the Social Security regulations describe as unskilled and/or semi-skilled. He operated a stacker at Mid South Lumber Company from 1997 to 1998. (Tr. at 400-07.) He bagged and carried out groceries at the Jitney Jungle, a grocery store, from 1999 to 2000. (Tr. at 400-07.) From 1999 to 2005 he worked at S.T. Bunn Construction, an asphalt paving company. (Tr. at 368.) While he originally described his position there as a machine operator, he later testified that he walked beside a shuttle buggy during road paving as the shuttle buggy fed asphalt to a spreader for placement on the road, and he shoveled any asphalt that fell off the buggy into the "boat." (Tr. at 112-13). Then from 2005 to 2008, he operated a forklift and wood banding unit at Mannington Wood Floors until he and other

employees were laid off. (Tr. at 400-07.) In these various jobs he routinely earned between $15,000 and $20,000 per year, which met SGA levels under the Social Security Administration's Program Operations Manual. *See* Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity, 2001 WL 1931773.

The medical evidence from the relevant time period demonstrates treatment by Plaintiff's treating physician, Dr. Gary M. Walton, for headaches, hypertension, hyperlipidemia, carpal tunnel syndrome, chest pain, type II diabetes, and obesity. (Tr. at 452-489.) Plaintiff was often noncompliant with medication. (Tr. at 452, 456.) On June 6, 2011, Dr. Walton noted Plaintiff was walking for exercise, and his hypertension had improved. (Tr. at 490). On October 19, 2011, Dr. Walton noted Plaintiff was doing "well" except for complaints of chest pain. (Tr. at 489). On January 6, 2014, Dr. Walton noted that Plaintiff was oriented to time, place, person, and situations, his mood was appropriate, and he had normal insight and judgment. (Tr. at 460.)

On November 14, 2011, Plaintiff was examined by Dr. Rex Harris at the request of the Social Security Administration. (Tr. at 460-66). Plaintiff complained of carpal tunnel syndrome of the right wrist, hypertension, hypercholesterolemia, and diabetes. (Tr. at 460). Dr. Harris noted full range of motion of the neck,

shoulders, wrists, and fingers, with some tenderness of the right hand. (*Id*). While Dr. Harris also noted "a lack of overall effort" by Plaintiff (tr. at 460), he opined that Plaintiff was capable of working at the sedentary level of exertion. (Tr. at 461-62.)

On December 6, 2011, Dr. Alan Sherman examined Plaintiff at the request of the Social Security Administration. (Tr. at 471-73). Dr. Sherman diagnosed mild hypertension, hyperlipidemia, diabetes, atypical chest pain, and questionable carpal tunnel syndrome. (Tr. at 473). Dr. Sherman concluded plaintiff would have "few physical limitations that would preclude gainful employment" and opined that he could work at the medium level of exertion. (*Id.*)

Mr. Baskin was examined by Donald W. Blanton, Ph.D., on February 1, 2012, at the request of Plaintiff's attorney. (Tr. at 491-95.) Mr. Baskin indicated to Dr. Blanton he was in special education classes throughout school and had not graduated. Dr. Blanton noted restlessness, limited insight, and fair judgment. (Tr. at 492). Mr. Baskin reported he lived with his grandmother, who did the shopping and cooking; he did not do any household chores; he did not go to any parties or clubs; he did not do any video or computer games; he did not participate in any sports; but he did attend church. (Tr. at 492). He stated that he had been married and had a driver's license. (Tr. at 491-92.) Dr. Blanton administered a Wide Range

Achievement Test ("WRAT"), which revealed that Mr. Baskin had reading and arithmetic skills on the third grade level and spelling skills on the fourth grade level. (Tr. at 493.) On the Wechsler Adult Intelligence Scale ("WAIS-IV"), Mr. Baskin had a Verbal Comprehension score of 61, a Perceptual Reasoning score of 71, a Working Memory score of 66, a Processing Speed score of 71, and Full Scale IQ of 61. (Tr. at 493). Dr. Blanton considered the scores valid and diagnosed mild mental retardation. (Tr. at 494.) Dr. Blanton also opined that Plaintiff was functionally illiterate and could not hold a job. (Tr. at 495.)

After the ALJ initially denied Plaintiff's application, but it was then remanded by the Appeals Council to the ALJ for further development, the ALJ ordered a consultative examination by Nina E. Tocci, Ph.D., which she performed on November 26, 2013. (Tr. at 532-35.) Plaintiff incorrectly reported to Dr. Tocci that he "never worked outside the home," and he stated he could not name five foods ("just chicken"). (Tr. at 533-534). Dr. Tocci concluded he "did not appear to know" how and why to take his insulin medication for his diabetes. (Tr. at 532). Plaintiff reported he had never married and lived with his grandmother and his son. He did not know why his daughter did not live with him. (Tr. at 533). During mental status examination, Dr. Tocci noted Plaintiff wore stained and dirty pants with a torn shirt wrong side out. (Tr. at 532.) Dr. Tocci administered IQ testing

that resulted in a full scale IQ score of 42. (Tr. at 534.) Dr. Tocci opined that this score was invalid, stating that Mr. Baskin did not listen to questions and attempted to use his non-dominant left hand during the test. (Tr. at 534.) Dr. Tocci diagnosed malingering and stated that Mr. Baskin "appeared to be functioning within the impaired range of intellectual ability." (*Id.*)

On December 16, 2013, Dr. Walid Freij completed a neurological examination of Plaintiff. (Tr. at 538-540). After examination, he concluded that Plaintiff could perform light work. (Tr. at 547).

At his hearing, Plaintiff testified that he took an oral test, not a road test, to obtain his driver's license. (Tr. at 114). He said he has never had a checking account and has never written a check. (Tr. at 114-15). He said he does not know how to measure the insulin for his diabetes, and his grandmother, who is also diabetic, measures it for him. (*Id.*) He also said his grandmother helps him tie his shoes. (Tr. at 115, 123, 149-50.) Despite writing in an earlier function report that he prepares his own meals weekly (tr. at 375), he testified that his grandmother does all of the household chores, shopping and cooking. (Tr. at 118-119, 123, 148-150). He said he has substantial difficulty reading and writing and that his grandmother filled out job applications for him. (Tr. at 114, 147-48.)

Taking all of the foregoing into account, the Court finds that there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's impairments do not meet or equal the strict requirements of Listing 12.05C (mental retardation). More specifically, there is substantial evidence to support the ALJ's conclusion that although Plaintiff had a valid full scale IQ score of 61 and some mental impairments manifesting before age 22, his work history and other daily activities show that he has exceeded the prognosis of the low IQ score through adaptive behavior. Indeed, while the ALJ did not dispute the validity of the IQ testing results obtained by Dr. Blanton, the ALJ did reject Dr. Blanton's diagnosis of mild mental retardation, as well as his opinions that Plaintiff had marked mental limitations and could not hold a job, as inconsistent with the other evidence of record, a conclusion that is supported by substantial evidence as explained in the next section.

The ALJ also correctly noted that the IQ score of 42 obtained by Dr. Tocci was not valid, and Dr. Tocci diagnosed malingering based on poor effort. (Tr. at 86-95, 532-535). Indeed, Plaintiff's presentation to Dr. Tocci, where he misrepresented his work history and could not name five foods, is inconsistent with his presentation to other physicians in the record where he could readily recount his medical history. (Tr. at 532-34, 538-40). *See Popp*, 779 F.2d at 1498-99, 1500

(affirming the determination that Listing 12.05C was not met despite IQ score of 69 when, among other things, the claimant "tended to place himself in a very unfavorable light"); *Bischoff v. Astrue*, 2008 WL 4541118, at *20 (S.D. Fla. Oct. 9, 2008) (affirming the determination that Listing 12.05C was not met despite low IQ score when, among other things, the claimant "faked" his IQ score and gave conflicting reports about the level of schooling he had completed). Rather than diagnose Plaintiff with mental retardation, Dr. Tocci opined that Plaintiff had "impaired intellectual ability," an opinion to which the ALJ gave great weight.

Additionally, Plaintiff reported a long history of unskilled and semi-skilled work for various employers in positions such as grocery bagger (medium, unskilled), hand bander (heavy, unskilled), construction worker for a paving company (heavy, unskilled), and forklift operator (medium, semi-skilled). (Tr. at 96, 125-126, 361, 365, 368-370, 400-407). The ALJ noted the performance of semi-skilled work for a significant period was not consistent with deficits of adaptive functioning required to demonstrate mild mental retardation. (Tr. at 86-95, 96). The ALJ further reasoned that despite having borderline intelligence, Plaintiff was obviously able to function in a work environment by understanding, remembering, and executing at least simple instructions, interacting with people, adhering to a schedule, and arriving at work. The ALJ also noted that the fact that Plaintiff

worked in his most recent job for over four years before he and other employees were laid off demonstrated that he had better adaptive functioning skills than what he claimed. Indeed, Plaintiff stopped working because he was laid off, not because of any deficit in adaptive functioning due to mental retardation.

In *Popp*, the Eleventh Circuit sustained the rejection of a claim of equivalency to Listing 12.05C because the claimant's IQ score of 69 was "inconsistent with evidence that [the claimant] had a two-year college associate's degree, was enrolled in a third year of college as a history major, and had worked in various technical jobs such as an administrative clerk, statistical clerk, and an algebra teacher." 779 F.2d at 1499. *Popp* is perhaps the strongest case for finding that an IQ score below 70 does not necessarily meet Listing 12.05C. However, there are several other cases with facts not as extreme as those in *Popp*. For example, in *Bischoff*, the claimant's IQ scores were lower than 70, but he had previously worked as a parts manager and an automobile mechanic, jobs which require technical knowledge and skills, and he successfully supervised other people for five years. 2008 WL 4541118, at *20. The district court affirmed the ALJ's determination that Listing 12.05C was not met. The same result occurred in *Davis v. Astrue*, 2008 WL 2939523 (M.D. Ala. July 25, 2008), where despite the claimant's IQ scores below 70, she had completed twelfth grade, received training

in cosmetology and secretarial skills, had a driver's license, was able to read, write, and perform simple math, and a consulting psychologist had determined that she was in the borderline level of intellectual functioning, rather than being mildly retarded. *Id.* at \*3. *See also Frame v. Comm'r*, 596 F. App'x 908, 912 n.4 (11th Cir. 2015) (noting in dicta that the ALJ had found that the claimant did not meet or equal Listing 12.05C because she was able to work in a stock room selecting parts by alphanumeric indicator and had been leader of a crew responsible for making sure parts were manufactured correctly).

While Mr. Baskin's work was unskilled and semi-skilled and did not involve supervising others or doing anything particularly technical, his work history is continuous and constituted SGA for over 10 years. In contrast, when courts have determined that a claimant's work history was *not* substantial evidence to discount low IQ scores, the work the claimants in those cases had done was sporadic and earned them very little income. For example, in *Alday v. Astrue*, the claimant earned an average of $2,243 per year over a 29-year period, and her work in jobs such as dishwasher, cook, and cleaner was discontinuous, with many gaps of no employment and no earnings. 2009 WL 347722, at \*6 (N.D. Fla. Feb. 11, 2009). In *Durham v. Apfel*, the claimant had no earnings for nine years and minimal earnings other years, working primarily as a heavy laborer, and he had completed only the

fourth grade. 34 F. Supp. 2d 1373, 1380 (N.D. Ga 1998). In *Griffin v. Astrue*, the claimant performed what the court called "sheltered work" for his uncle with special accommodations made due to the family relationship and often had minimal or no earnings. 2009 WL 1788185, at *10 (N.D. Fla. June 23, 2009). The Court is of the opinion that Mr. Baskin's steady work history is strong evidence undermining his IQ score. There is no evidence in the record that Plaintiff had trouble meeting the demands of his various jobs due to mental limitations. *Contra Stephens v. Astrue*, 2009 WL 387157, at *5 (M.D. Ala. Feb. 13, 2008) (the claimant's work history—he worked at 29 jobs from 1987 to 2002—demonstrated that he was unable to remain in a job for any significant duration and he had testified that he had "difficulty holding a job because employers 'had to keep telling him over and over' what to do").

The ALJ also considered Plaintiff's daily activities, noting that Plaintiff had a valid driver's license, which shows that he can operate a vehicle, obey traffic laws, and passed a driver's license examination; that while he lives with his grandmother and is dependent on her for management of his diabetes, he also talks on the phone and has friends, he goes shopping, he prepares some meals, and he attends church, acting as an usher. (Tr. at 87-88.) The ALJ also noted that Plaintiff indicated on his function report that he wrote his own responses, and he signed his name, which

indicates that he can read and write. (Tr. at 87-88). The Court also notes that Plaintiff's medical records regarding his physical condition do not mention mental limitations or lack of intelligence. Rather, his treating physician, Dr. Walton, indicated that Mr. Baskin was oriented to time, place, and person, and had normal insight. Of course, Plaintiff's health care providers may not have carefully assessed the level of Plaintiff's intellectual functioning in the course of treating physical ailments. And the Court acknowledges that activities such as having a boyfriend or girlfriend, doing light household chores and cooking, taking care of a pet, watching television, counting change, and even driving have been found by numerous courts to be not inconsistent with a finding of mental retardation. *See, e.g., Alday*, 2009 WL 347722, at *7. However, the Court is of the opinion that there is substantial evidence in this record to support the ALJ's conclusion that despite Plaintiff having an IQ between 60 and 70 and mental limitations manifesting before age 22, he does not meet the requirements of Listing 12.05C because his level of adaptive functioning exceeds his IQ score. *See Miles*, 84 F.3d at 400 ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.").

###    B.    Weight Given to One-Time Examiner's Opinion

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not

examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources, and non-treating medical sources over non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). On the other hand, the opinions of a one-time examiner or of a non-examining medical source are not entitled to the initial deference afforded to a physician who has an ongoing treating relationship with a plaintiff. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). However, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

Substantial evidence exists to support the ALJ's decision to give only some weight to Dr. Blanton's opinions. As a one-time examiner, Dr. Blanton's opinions were not due any special deference by the ALJ. The ALJ noted that Dr. Blanton's

opinions that Plaintiff had "marked limitations that would interfere with his ability to perform work related activities on a day-to-day basis in a regular work setting" were inconsistent with the fact that Plaintiff has been working for over ten years at SGA levels in unskilled, and even some semi-skilled, jobs, despite having borderline intelligence. (Tr. at 87-88, 94-96). The ALJ also indicated that Dr. Blanton's opinion that Plaintiff had "marked" mental limitations may have been based on Plaintiff's subjective allegations, as the severity of the limitations were not supported by the other evidence of record. (Tr. at 87-88, 94-96).

## IV.   Conclusion

Upon review of the administrative record, and considering all of Mr. Baskin's arguments, the Court finds the magistrate judge's Report & Recommendation (doc. 12) is not due to be adopted and accepted, and the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON MARCH 28, 2018.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704